Abraham N. Geller, J.
Defendant the City of New York moves to deny to plaintiffs Patrolmen’s Benevolent Association (hereinafter PBA) and two patrolmen suing on behalf of themselves and on behalf of all patrolmen similarly situated, discovery of items listed in plaintiffs’ notice. Plaintiffs cross-move to dismiss the city’s affirmative defenses and for summary judgment pursuant to CPLB, 3212.
*408 In its subsequent papers and brief defendant city requests summary judgment dismissing the complaint. CPLB 3212 (subd. b) provides: “If it shall appear that any party.other than the moving party is entitled to a summary judgment, the court may grant such judgment without the necessity of a cross motion ”. The court will therefore first consider the question as to whether summary judgment shall be granted to either party on the ground that there are no triable issues of fact and that the cause of action or defense has been sufficiently established to warrant the court as a matter of law to direct judgment.
This is an action to recover overtime compensation which the city has allegedly refused to pay to several hundred patrolmen fqr overtime duty performed at the time of the Harlem and Bedford-Stuyvesant riots in the Summer of 1964. The city did pay 10,793 patrolmen $584,978 in overtime compensation in connection with those riots. Plaintiffs raise two questions with respect to other patrolmen who were not paid overtime compensation: (1) those who then performed more than 8 hours duty in a 24-hour period, though not more than 40 hours a week; (2) those assigned to clerical duties indoors during the riots.
The PBA sues as the exclusive bargaining representative of all patrolmen (except detectives) to enforce a collective bargaining agreement, which both sides agree was embodied in a certain mayoral personnel order. The same relief is sought, in the alternative, in the class action brought by the two patrolmen.
The issue, then, depends on the interpretation of that personnel order. It will be helpful to review the relevant principles governing this question.
The law limits to eight hours the tours of policemen on duty in the streets or other public places except in the event of riots or other similar emergency, when they ‘ ‘ may be continued on duty for such hours as may be necessary”. But there is no law requiring a patrolman on duty beyond his normal hours to be paid overtime compensation for the extra duty. In Crane v. City of New York (185 Misc. 456, affd. 270 App. Div. 930), involving the claim for overtime compensation of firemen who have a similar “ Three Platoon System”, the court dismissed the complaint as not stating a cause of action against the city. However, section 90 of the General Municipal Law does provide that in the City of New York the Mayor, by ordinance, local law, resolution, order or rule, may provide for payment of overtime compensation to public officers.
*409 That power was exercised after the collective bargaining negotiations with the PBA in the promulgation of a mayoral personnel order in 1964, whose proper interpretation controls the disposition of this case. It provides:
“ 1. Ordered overtime work * * * which is required for election duty or to prevent loss of or danger to life and property during police emergency conditions affecting the department on a large scale shall be compensated for by cash payment at the rate of time-and-one-half, based on the employee’s regular salary.
2. Ordered overtime work * * * which is required for purposes other than those indicated in (1) above shall be compensated for by time off at the rate of time-and-one-half in lieu of cash payments.
3. The ‘ General Rules Governing the Payment of Overtime for City Employees ’ adopted by the Board of Estimate on March 22,1962 shall, except for the rate of pay or compensatory time off and except as hereinabove otherwise provided, apply to overtime compensation. ’ ’
Paragraph 4.0 of the “ General Rules ” stated to be applicable in paragraph 3 of the personnel order provides: ‘ ‘ Overtime pay shall be limited to time actually worked in excess of existing work schedules, but only for approved overtime beyond 40 hours ”.
Thus, overtime pay for ordered overtime work is payable only for duty in excess of 40 hours in a normal work week. It is not payable for duty performed in excess of 8 hours in a 24-hour period unless it is part of a work week wherein more than 40 hours of duty has been performed. It may also be observed that that is the standard under the Federal law dealing with the right to overtime compensation at the rate of one-and-one-half times the regular rate (U. S. Code, tit. 29, § 207).
(1) of plaintiffs’ claim is accordingly held to be without merit as a matter of law.
(2) of plaintiffs’ claim involves the group of patrolmen who were assigned and worked overtime performing clerical duties indoors during the riots and were given compensatory time off at time-and-one-half in lieu of cash payments. It is urged that, since they worked during the riots, they should have received overtime cash payments.
However, the time of performance is not the essential distinction between paragraph 1 of the personnel order, providing overtime cash payments, and paragraph 2, providing compen *410 satory time off. It is the “ purpose ” of the ordered overtime work, which is stated to result in the difference of form of compensation. Cash payment under paragraph 1 is for overtime duty ‘ ‘ to prevent loss of or danger to life and property during police emergency conditions ’ ’; compensatory time off under paragraph 2 is for overtime duty ‘ ‘ for purposes other than those indicated in (1) ”.
The department’s interpretation that cash payments are to be for ordered overtime duty in the streets, open air or public places during emergency conditions and compensatory time off for ordered overtime duty in nonhazardous duties, whether performed during normal or emergency conditions, is based on a reasonable interpretation of the distinction made in this personnel order. It seems clear that one performing clerical work indoors, even though working overtime because more patrolmen are needed outdoors during emergencies and because police work of all kinds necessarily increases then, is not working for the purpose of preventing ‘ ‘ loss of or danger to life and property during police emergency conditions ” in the sense in which the patrolman facing hazards in the streets and public places at those times is performing such duties.
At least the distinction made by the department is reasonably derived from the terms of the personnel order. The practical construction by an agency of its administrative order, if reasonably based, should be accorded persuasive weight.
The court accordingly determines that (2) of plaintiffs’ claim is also without merit as a matter of law.
This disposes of plaintiffs’ claims in this action. It is unnecessary, therefore, to consider the preliminary procedural questions raised as to whether PBA and the two individual plaintiffs have standing to bring this class action and whether there has been compliance with the requirement of notice of all claims to the Comptroller prior to suit. Defendant is entitled to summary judgment dismissing the complaint.